**IN THE UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**HUNT & HARRIS LAW FIRM**                                                               **PLAINTIFF**

**v.**                                                    **4:05CV01622-WRW**

**INTERNATIONAL PAPER**
**COMPANY and CALVIN STAUDT**                                              **DEFENDANT**

<u>**ORDER**</u>

      This is an interference with contract claim.  Plaintiff, Hunt and Harris Law Firm, alleges

that Defendants interfered with an attorney client contract based on a client's Equal Employment

Opportunity ("EEOC") claim.  This case was filed in state court, but was removed.[1]

      An Order was entered denying Plaintiff's Motion to Remand.[2]  However, questions about

federal preemption were raised anew when Defendant filed its Motion for Summary Judgment.[3]

Because of doubts about preemption, the parties were asked to clarify their arguments on this

issue.[4]  Defendant filed its Response to the Court's Request for Clarification of the Preeemption

---

[1]Doc. No. 1.

[2]Doc. No. 19.

[3]Doc. No.  8.

[4]My letter of June 1, 2006 asked Defendant to further explain why the Labor Management
Relations Act ("LMRA") should control when an interference with contract claim is based on an
EEOC claim that is independent of the LMRA.

Issues,[5] and Plaintiff responded with a Brief in Opposition.[6] Also pending is Defendant's Motion for Summary Judgment[7] and the EEOC's Motion to Quash.[8]

## I.    Background

Plaintiff's claim arises from its representation of Earnestine White ("White"), one of Defendant International Paper's ("IP") employees.  After being discharged by IP, White filed a grievance with her union and then hired Plaintiff to represent her in an employment discrimination suit.   Plaintiff immediately notified IP that it represented White and made a settlement demand to IP with White's approval.  Plaintiff also filed an EEOC charge on White's behalf.[9]

Defendants were aware that White was represented in her EEOC claim.  Nevertheless, Defendants settled the Title VII claim with White as part of a grievance procedure under a collective bargaining agreement ("CBA") between IP and the Union.[10]   Under the CBA the Union is the "exclusive representative for collective bargaining for all of its production and maintenance employees."[11]  While the Union is given general powers of arbitration under the

---

[5]Doc. No. 38.

[6]Doc. No. 40.

[7]Doc. No. 21.

[8]Doc. No. 41.

[9]The EEOC charge has not been provided.

[10]The name of the Union at IP is:  Paper, Allied-Industrial, Chemical and Energy Workers and Local Union 2033 of the International Brotherhood of Electrical Workers.

[11]Doc. No. 11, Ex.  A, § II (A) & (C).

CBA, there is no specific language in this agreement that compels union representation and arbitration of discrimination or Title VII claims.[12]

White settled her claim through the Union.  She was reinstated and given a lump-sum payment equivalent to sixty days of wages.  The settlement was paid directly to White.  Her lawyer was unaware of the negotiation and did not participate in the settlement.  In the settlement, White released "any and all claims she may have against the Company [IP] related to her termination or the incident that led to her termination."[13]  The Release included "all claims under any and all federal, state, and local law, including but not limited to, Title VII of the Civil Rights Act of 1964."[14]

Defendants maintain that federal jurisdiction is proper under 28 U.S.C. § 1441(b).  Defendants argue that in order to decide whether the Defendants improperly interfered with the attorney client contract, an interpretation of the CBA is necessary.  The application and interpretation of the CBA are governed by the Labor Management Relations Act.[15]

---

[12]Doc.  No.  11, Exs.  A and B.

[13]Doc. No. 21-6.

[14]*Id.*

[15]Under 29 U.S.C. § 185(a) (also known as § 301 of the LMRA), "suits for violation of contracts between an employer and a labor organization representing employees may be brought in any district court of the United States having jurisdiction of the parties."

## II.  Authority

### A.  Preemption

Section 301 of the LMRA preempts state law claims "where the resolution of the state claim substantially depends on the interpretation of terms or provisions of a collective bargaining agreement,"[16] or where it is "inextricably intertwined" with consideration of the collective bargaining agreement.[17]  On the other hand, simply referring to a collective bargaining agreement does not result in preemption.[18]  When the meaning of contract terms is not disputed, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."[19] Complaints alleging a violation of state law without asserting a breach of the CBA have been found not preempted by federal law.[20] However, if a plaintiff relies on the terms of a CBA to establish a state law claim -- then the claim is preempted.[21]

### B.  Waiver of Title VII Rights

---

[16]*Hanks v. General Motors Corp.*, 906 F.2d 341, 343 (8th Cir. 1990) (internal quotations omitted).

[17] *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985).

[18] *Thomas v. Union Pac. R.R. Co.*, 308 F.3d 891, 893 (8th Cir. 2002).

[19]*Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

[20]*See Deneen v. Northwest Airlines, Inc.*, 132 F.3d 431 (8th Cir. 1998); *Welch v. Gen. Motors Corp., Buick Motor Div.*, 922 F.2d 287 (6th Cir. 1990).

[21]*Carlson v.  Arrowhead Concrete Works, Inc.*  445 F.3d 1046 (8th Cir. 2006) (internal quotations omitted).

When an employee has both a contractual right by virtue of a collective bargaining agreement (or other employment contract), and a statutory right to be free from discrimination, "both rights have legally independent origins and are equally available to the aggrieved employee."[22]  A union cannot surrender an employees' Title VII rights, without the employee's permission[23]

The Supreme Court held that a CBA does not automatically give a union exclusive control of Title VII claims: "We will not infer from a general contractual provision that the parties intended to waive a statutorily protected right unless the undertaking is 'explicitly stated.' More succinctly, the waiver must be *clear and unmistakable*."[24]  The Court further held: "We think the same standard is applicable to a union-negotiated waiver of an employee's statutory right to a judicial forum for claims of employment discrimination."[25]

III.   **Analysis**

---

[22]*Tice v. American Airlines, Inc.*, 288 F.3d 313 (7th Cir. 2002) (*citing Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974); *Pryner v. Tractor Supply Co.*, 109 F.3d 354, 361 (7th Cir. 1997); *Viggiano v. Shenango China Division*, 750 F.2d 276, 279-81 (3d Cir.1984); *Air Line Pilots Ass'n, Int'l v. Northwest Airlines, Inc.*, 627 F.2d 272, 277-78 (D.C.Cir. 1980)).

[23]*EEOC v. Indiana Bell Telephone Co.*, 256 F.3d 516 (7th Cir.  2001)(*citing Wright v. Universal Maritime Service Corp.*, 525 U.S. 70, 75-76 (1998); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974*); Pryner v. Tractor Supply Co.,* 109 F.3d 354 (7th Cir. 1997)).

[24]*Wright v.  Universal Maritime Service Corp.*, 525 U.S. 70, 80 (1998) (*citing Metropolitan Edison Co.  v.  NLRB,* 460 U.S. 693, 708 (1983); *Livadas v. Bradshaw*, 512 U.S. 107, 125 (1994) (dictum); *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 409 (1988) (dictum); *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 283 (1956) (emphasis added)).

[25]*Id.*

Because White's grievance was settled under the CBA, IP contends that in order for Plaintiff to prove it interfered with a contractual relationship, an interpretation of the CBA is unavoidable.  IP reasons that such an interpretation is necessary in order to determine whether it acted intentionally and improperly by settling the grievance through the mandatory grievance procedures set out in the collective bargaining agreement.  I disagree.  Title VII claims are independent, and are not based on the application of collective bargaining agreements.

It is not necessary to interpret the CBA to determine the rights and obligations of the parties because, in this case, the CBA is inapplicable.  Under *Wright*,[26] a Union does not have exclusive rights to arbitrate Title VII claims unless such a right is clearly set out in the CBA.  There are no such "clear and unmistakable"[27] provisions in IP's CBA. Without such provisions in the CBA, Title VII claims are independent.[28]  White filed her grievance under the CBA and hired an attorney to assert her Title VII rights.  The Union could represent her under the CBA, but her EEOC attorney had given IP notice that he was representing her for an alleged violation of Title VII.

Because the CBA is not clear about Title VII complaints, it is incidental to Plaintiff's interference with contract claim.  The release -- not the CBA-- specifically mentions Title VII.  However, the release is not governed by the LMRA, and the release was presented to White after IP was notified she was represented on her Title VII claim.   Plaintiff, Hunt and Harris, are not

---

[26]*Wright*, 525 U.S. at 80.

[27]*Id.*

[28]*Tice*, 288 F.3d at 317 (internal citations omitted).

asserting a breach of the CBA, they are claiming that Defendants, IP and Mr. Staudt, induced White to release her independent Title VII claim without notifying her lawyers.

Defendants rely on the CBA to impose federal jurisdiction on a state-law contract claim. However, there is no clear and unmistakable terms in the CBA to apply or interpret.  Thus, there is no federal question.   In view of this, the previous Order denying Plaintiff's Motion to Remand is set aside, and the Motion to Remand is GRANTED.  All other pending Motions, including the Motion for Summary Judgment and the Motion to Quash are DENIED as MOOT.

IT IS SO ORDERED this 6th day of November, 2006.


/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE